**No. 24-3233**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

CHELSEY DUDLEY,

*Plaintiff-Appellant,*

v.

BOISE STATE UNIVERSITY; TONY ROARK, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; MANDY NELSON, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; KATE LAW, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; JOELLE POWERS, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; JOHN BUCKWALTER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; CHRISTOPHER HYER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; ROGER MUNGER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; GUNNAR WHISLER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; KELSIE ZAK, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; EMMA FORD, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; MIKE DIXON, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Idaho
No. 1:22-cv-00495-DCN
Hon. David C. Nye

---

### APPELLEES' ANSWERING BRIEF

---

Michael E. Kelly, ISB No. 4351
KELLY LAW, PLLC
PO Box 45294

Boise, ID 83711
(208) 342-4300
mek@kellylawidaho.com

*Attorneys for Appellees Boise State
University, Tony Roark, Mandy Nelson,
Kate Law, Joelle Powers, John
Buckwalter, Christopher Hyer, Roger
Munger, Gunnar Whisler, Kelsie Zak,
Emma Ford, Mike Dixon*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

ISSUES PRESENTED ...........................................................................3

STATEMENT OF THE CASE ...............................................................4

SUMMARY OF THE ARGUMENT .....................................................9

STANDARD OF REVIEW ..................................................................10

ARGUMENT ........................................................................................11

    I. Ms. Dudley Failed to State a Procedural Due Process Claim ....................11

        A.      Ms. Dudley Lacks a Protected Property Interest ......................12

        B.      Ms. Dudley Lacks a Protected Occupational Liberty Interest..17

        C.      Ms. Dudley Received Adequate Process .................................19

                1.      Change of Ms. Dudley's Grade and Resulting Revocation of Her Degree ...............................................................20

                2.      The Student Conduct Hearing and Ms. Dudley's Expulsion ........................................................................26

    II.      Defendants are Entitled to Qualified Immunity ................................29

    III.      The District Court Did Not Abuse its Discretion in Denying Ms. Dudley's Request for Permanent Injunctive Relief ...........................31

i

IV.    The District Court Did Not Abuse its Discretion in Denying Ms. Dudley's Request for Preliminary Injunctive Relief ........................... 32

CONCLUSION ................................................................................................ 34

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Akina v. Hawaii*, 835 F.3d 1003 (9th Cir. 2016) ....................................................33

*Ashcroft v. al–Kidd*, 563 U.S. 731 (2011) ....................................................... 29, 30

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023)....................................................11, 32

*Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978) .................... 21, 22

*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) ...........................................................12

*Black Coal. v. Portland Sch. Dist. No. 1*, 484 F.2d 1040 (9th Cir. 1973)......... 26, 28

*Brady v. Portland State Univ.*, No. 3:18-CV-01251-HZ, 2019 WL 4045652 (D. Or. Aug. 23, 2019) ....................................................................................................17

*Brown v. Armenti*, 247 F.3d 69 (3rd Cir. 2021).......................................................16

*Brown v. Li*, 308 F.3d 939 (9th Cir. 2002)...............................................................23

*Doe v. White*, 859 F. App'x 76 (9th Cir. 2021) *cert. denied*, 142 S. Ct. 1414 (2022) .............................................................................................................................13

*Duffin v. Idaho State Univ.*, No. 4:16-CV-00209-BLW, 2017 WL 6543873 (D. Idaho Dec. 21, 2017) ......................................................................................................15

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)......................................31

*Engquist v. Or. Dep't of Agric.*, 478 F.3d 985 (9th Cir. 2007), *aff'd sub nom. Engquist v. Or. Dep't of Agr.*, 553 U.S. 591 (2008) ............................................................18

*Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465 (9th Cir. 1991).....................18

iii

*Fenje v. Feld*, 398 F.3d 620 (7th Cir. 2005)......................................................24

*Fernandez v. Rosenzwieg*, No. CIV. 95-241-FR, 1996 WL 453046 (D. Or. Aug. 8, 1996) ........................................................................................................17

*Goss v. Lopez*, 419 U.S. 565 (1975)..............................................................12

*Hennessy v. City of Melrose*, 194 F.3d 237 (1st Cir. 1999)....................................21

*J. Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281 (6th Cir. 2019) ............................24

*Kennerly v. United States*, 721 F.2d 1252 (9th Cir. 1983) ....................................28

*Kerbs v. Madison Cnty., Idaho*, No. 4:12-CV-00178-EJL, 2014 WL 869472 (D. Idaho Mar. 5, 2014) .....................................................................................19

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ..........................................13

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197 (9th Cir. 1980) ..................................................................................................32

*Lovelace v. Southeastern Mass. Univ.*, 793 F.2d 419 (1st Cir. 1986) ......................25

*Lund v. Cowan*, 5 F.4th 964 (9th Cir. 2021)...................................................10

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ..10, 11

*Mathews v. Eldridge*, 424 U.S. 319 (1976)................................................ 20, 21, 27

*Mauriello v. Univ. of Med. & Dentistry*, 781 F.2d 46 (3d Cir. 1986).......................21

*Moonin v. Tice*, 868 F.3d 853 (9th Cir. 2017) ................................................29

*Njokom v. El Camino Cmty. Dist. Coll.*, No. CV 20-9287-CAS (KS), 2020 WL 6438415 (C.D. Cal. Oct. 14, 2020), *appeal dismissed sub nom. Njokom v. El*

iv

*Camino Cmty. Coll. Dist.*, No. 20-56153, 2020 WL 8373362 (9th Cir. Nov. 19, 2020) ....................................................................................................16

*Oregon Coast Scenic R.R., LLC v. Oregon Dep't of State Lands*, 841 F.3d 1069 (9th Cir. 2016) ..................................................................................................11

*Oyama v. Univ. of Hawaii*, 813 F.3d 850 (9th Cir. 2015) ........................... 22, 23, 24

*Paul v. City of Sunnyside*, 405 F. App'x 203 (9th Cir. 2010)...................................18

*Pavel v. Univ. of Oregon*, 774 F. App'x 1022 (9th Cir. 2019) .................................30

*Pearson v. Callahan*, 555 U.S. 223 (2009)...............................................................29

*Perez v. Texas A & M Univ.*, 589 F. App'x 244 (5th Cir. 2014)...............................24

*Portman v. Cnty. of Santa Clara*, 995 F.2d 898 (9th Cir. 1993) ......................... 9, 12

*Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985) .......................................22

*Ryan v. Harlan*, No. CV-10-626-ST, 2011 WL 711110 (D. Or. Feb. 22, 2011).......17

*Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004), *as amended* (Oct. 18, 2004) ......18

*Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008)...................................................16

*Sorrels v. McKee,* 290 F.3d 965 (9th Cir. 2002)......................................................30

*Stronach v. Virginia State Univ.*, No. CIV.A. 3:07CV646-HEH, 2008 WL 161304 (E.D. Va. Jan. 15, 2008)........................................................................... 16, 23

*Summers v. City of McCall*, 84 F. Supp. 3d 1126 (D. Idaho 2015).........................28

*T.T. v. Bellevue Sch. Dist.*, 376 F. App'x 769 (9th Cir. 2010).................................25

v

*Taylor v. Bd. of Regents of Univ. Sys. of Ga.*, 2022 WL 4857906 (N.D. Ga. Oct. 3, 2022) ................................................................................................................22

*United States v. Estate Pres. Serv.*, 202 F.3d 1093 (9th Cir. 2000)..........................11

*Wickstrom v. N. Idaho Coll.*, 725 P.2d 155 (Idaho 1986)..........................................14

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......................................31

*Wozniak v. Conry*, 2365 F.3d 888 (7th Cir. 2001)....................................................25

*Wynar v. Douglas Cty. Sch. Dist.*, 728 F.3d 1062 (9th Cir. 2013)............................13

*Zeyen v. Boise Dist. #1*, No. 1:18-CV-207-RCT, 2023 WL 4215402 (D. Idaho June 9, 2023), *aff'd sub nom. Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129 (9th Cir. 2024) ......................................................................................... 15, 16

*Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129 (9th Cir. 2024) ....................15

**Rules**

Fed. R. Civ. P. 12(b) ........................................................................................ 9, 10

**INTRODUCTION**

Appellant Chelsea "Brooke" Dudley was a student at Boise State University ("BSU"), a public university. A part of her degree requirement was to complete an internship with Idaho Department of Health and Welfare ("IDHW"). Ms. Dudley completed the internship and was given a passing grade in the spring of 2022. Ms. Dudley graduated with a Bachelor of Arts degree in Social Work in May 2022.

Later in 2022, BSU obtained information from IDHW that established "beyond doubt" that, during her internship, Ms. Dudley accessed confidential client information in the IDHW database of individuals in her personal life that she had no authorization to view. IDHW informed BSU that, had this information been discovered during her internship, Ms. Dudley would have been immediately dismissed from the internship and assigned a failing grade. Based on this information, BSU Interim Divisional Dean for the College of Health Sciences School of Social Work, Tony Roark, informed Ms. Dudley that her grade in the internship would be changed from a passing grade to a failing grade, and that because of the grade change, Ms. Dudley had not satisfied the degree requirements and that her degree would no longer be valid. Ms. Dudley was informed she could appeal the grade change. The matter was also referred to the Student Conduct Board for potential additional discipline. A Student Conduct Hearing was scheduled, but prior to the hearing, Ms. Dudley filed this lawsuit, and the District Court entered a

1

temporary restraining order preventing BSU from holding the hearing. On December 20, 2022, the District Court declined to extend the temporary restraining order beyond its expiration on December 23, 2022. On February 17, 2023, a Student Conduct Hearing was held in which Ms. Dudley participated and presented her defense. Following the hearing, the Student Conduct Board imposed sanctions of expulsion and degree revocation. Ms. Dudley appealed the decision of the Student Conduct Board, and the appeal was denied.

At issue in this case is whether Ms. Dudley had a recognized property interest under state law in Idaho in her education, grade, and degree, whether she had an occupational liberty interest, and if so, whether she was given due process.

The District Court correctly concluded that Idaho state law does not recognize cognizable property interest in education and that Ms. Dudley failed to establish an occupational liberty interest procedural due process claim. Ms. Dudley's failure to establish either interest is fatal to her claim. However, the District Court correctly determined that even if Ms. Dudley had established either a property or liberty interest, the due process afforded by Defendants/Appellees was adequate. Based on the foregoing, the District Court correctly dismissed Ms. Dudley's claim for injunctive relief. The District Court also did not abuse its discretion in declining to extend the temporary restraining order. Finally, the District Court correctly concluded the individual Defendants/Appellees were entitled to qualified immunity.

## JURISDICTIONAL STATEMENT

Appellees agree with Appellant's Jurisdictional Statement.

## ISSUES PRESENTED

1.     Did the District Court correctly dismiss Ms. Dudley's property interest procedural due process claim by determining that she did not have a property interest in her grade, degree, and credits from BSU because Idaho state law does not confer a property interest in education?

2.     Did the District Court correctly dismiss Ms. Dudley's occupational liberty interest procedural due process claim by determining that Ms. Dudley failed to establish that she is unable to pursue an occupation and such inability was due to government actions that are arbitrary and lacking a rational basis?

3.     Did the District Court correctly determine that even if Ms. Dudley had established a property interest or occupational liberty interest, she failed to establish due process was not adequate in both the change of her grade and the subsequent student conduct hearing and expulsion?

4.     Did the District Court correctly determine the individual Defendants/Appellees were entitled to qualified immunity?

5.     Did the District Court correctly deny Ms. Dudley's request for permanent injunctive relief?

3

6. Did the District Court correctly deny Ms. Dudley's request for preliminary injunctive relief?

## STATEMENT OF THE CASE

Ms. Dudley graduated from Boise State University ("BSU") with a Bachelor of Arts degree in Social Work on May 7, 2022. 2-ER-142. In order to graduate, Ms. Dudley had to complete 120 credits, several specific social work classes, specific "core classes," and complete required internships. 2-ER-145. One such internship was with Idaho Department of Health and Welfare ("IDHW"), coded by BSU as SOCWRK 481. *See* 2-ER-156. Upon completion of the semester, because the University was unaware of misconduct by Ms. Dudley, which would have resulted in her receiving a failing grade in the course, Ms. Dudley received a passing grade in SOCWRK 481. *See id.*

Thereafter, Defendant Tony Roark, the BSU Interim Divisional Dean for the College of Health Sciences School of Social Work, was contacted by IDHW after IDHW had conducted an investigation into conduct by Ms. Dudley that established "beyond doubt that [Ms. Dudley] accessed confidential client information within IDHW's database . . ." during her internship and that she had "no authorization" or "legitimate business interest" in looking into those files. 2-ER-155-156. Interim Dean Roark sent Ms. Dudley a letter on November 22, 2022, informing her that the IDHW had brought to his attention certain events that occurred during Ms. Dudley's

4

internship earlier that year. Dr. Roark further informed Ms. Dudley that because of her conduct during her internship her passing grade of "P" for SOCWRK 481 would be changed to a failing grade of "F" and that, as a result of the grade change, she no longer met the requirements for graduation. *Id*. Dr. Roark informed Ms. Dudley that she would be contacted by the Office of the Registrar for further action. *Id*. Dr. Roark also informed Ms. Dudley that she could appeal his decision to change her grade, pursuant to University Policy 3130, Grade Appeals. *Id*. Finally, Dr. Roark noted the entire matter had been referred to the Dean of Students for possible disciplinary action under University Policy 2020 ("Student Code of Conduct"). *Id*.

The following day, Mandy Nelson from BSU's Office of the Registrar sent Ms. Dudley a letter stating that as a result of the grade change, "you no longer satisfy the graduation requirements for a Bachelor of Arts in Social Work. Thus, your degree has been rescinded." 2-ER-156.

On November 9, 2022, BSU sent the State of Idaho's Division of Occupational and Professional Licensing a revised transcript. *Id*. On November 17, 2022, Assistant Dean of Students, Dr. Kate Law, sent Ms. Dudley an email entitled "Notification of Incident and Pre-Hearing Meeting." 2-ER-158. This email stated a pre-hearing meeting would be scheduled for November 29, 2022. *Id*. The email further stated that BSU had received information that Ms. Dudley had allegedly violated the Student Code of Conduct, the National Academy of Social Work code of ethics, the

5

BSU student Professional Conduct and Professional Standards, IDHW's expectations for employees and interns, and state and federal privacy laws. 3-ER-407. Dr. Law said the incident would be referred to the Conduct Hearing Board for review. 3-ER-408. Dr. Law provided additional information regarding the hearing process itself and Dudley's rights in her email. The hearing was scheduled for December 12, 2022. 2-ER-158.

Ms. Dudley attended the pre-hearing meeting with Dr. Law where Dr. Law explained the process and procedures that would be followed at the Student Conduct Hearing in December and informed Ms. Dudley of her rights at the hearing. 2-ER-158. On December 7, 2022, Dr. Law provided Dudley with an information packet that included information about the Student Conduct Hearing and the evidence the University, the Complainant, intended to rely upon at the hearing. 3-ER-213-304.

On December 7, 2022, Ms. Dudley filed this lawsuit and a Motion for Temporary Restraining Order. 3-ER-479-496. Ms. Dudley requested the District Court enjoin BSU from conducting the Student Conduct Hearing on December 12, 2022 and require Defendants follow certain procedures during any future hearing. 3-ER-477.

On December 9, 2022, the District Court issued a decision granting, in part, Ms. Dudley's Motion for Temporary Restraining Order. 3-ER-385-395. In doing so, the District Court enjoined Defendants from holding the Student Conduct Hearing

on December 12, 2022, required Ms. Dudley to serve Defendants, required Defendants to respond to Ms. Dudley's Motion for Temporary Restraining Order on or before December 19, 2022, and set a hearing for December 20, 2022. 3-ER-394-395.  BSU vacated the December 12, 2022, Student Conduct Hearing. 2-ER-159.

The District Court held a hearing on December 20, 2022, on whether to extend the Temporary Restraining Order and decided it would not extend it upon its expiration on December 23, 2022. 1-ER-49.

On January 9, 2023, Dr. Law sent a new notice to Ms. Dudley informing her the Student Conduct Hearing had been reset for February 17, 2023, and reiterating the allegations against her. 2-ER-159. On February 10, 2023, Dr. Law provided Ms. Dudley an informational packet for the rescheduled hearing, which contained material about the hearing process, the information and evidence the University, the Complainant, intended to rely on, and a written response to the allegations Ms. Dudley had prepared following the previous round of communications. 2-ER-160. The information and evidence showed that Ms. Dudley used the IDHW "database which holds confidential, client information, to look up people she knows in her personal life," her ex-partner and his new partner, and that she "presumably read information from past child protection cases on these individuals." 2-ER-161. Dudley texted her ex-partner's new partner and said things to her that Ms. Dudley

7

only could have known about from accessing IDHW's confidential files. 1-ER-35 n.3.

On February 17, 2023, BSU held the Student Conduct Hearing, which lasted approximately one hour and twenty minutes. 2-ER-169-170. The Complainant presented its case in the same form as outlined in its notification to Ms. Dudley. 2-ER-170. Ms. Dudley presented her defense and testified. 2-ER-171. Ms. Dudley denied that she searched for the names of two individuals from her personal life, but she did not dispute that she accessed their files and her own files. *Id*. Near the end of the hearing, the Complainant requested the Student Conduct Board revoke Ms. Dudley's degree and expel her from BSU. 2-ER-174.

On March 1, 2023, Dr. Law sent Ms. Dudley the decision of the Student Conduct Board, which revoked her degree and expelled her from BSU. 2-ER-175. Ms. Dudley appealed the Student Conduct Board's decision, pursuant to Policy 2020 § 9, and on April 28, 2023, Dr. Law informed Ms. Dudley her appeal had been denied by an appeals panel. *Id*.

On July 14, 2023, Ms. Dudley filed her First Amended Complaint for Injunctive Relief and Demand for Jury Trial with the District Court. 2-ER-138.

On September 25, 2023, Defendants filed a Motion to Dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible cause of action. 2-ER-117-137. On October 23, 2023, Ms. Dudley

filed her Response to Defendants' Motion to Dismiss. 2-ER-90-116. On November 13, 2023, Defendants filed a Reply Memorandum in Support of Motion to Dismiss. 2-ER-79-89. Ms. Dudley filed a Motion for Leave to File a Sur Reply on January 11, 2024, which was denied by the District Court on March 8, 2024. 2-ER-51-52. On May 3, 2024, the District Court issued its Memorandum Decision and Order, granting Defendants' Motion to Dismiss. 1-ER-32-49.

## SUMMARY OF THE ARGUMENT

The District Court properly dismissed Ms. Dudley's First Complaint for failure to state a claim pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. To state a procedural due process claim, a plaintiff must allege: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The District Court properly held Ms. Dudley's claims fail to set forth a protected property or liberty interest. A property interest is grounded in state law, and there is no law in Idaho recognizing a property interest in an individual's education or degree. Ms. Dudley failed to state an occupational liberty interest procedural due process claim because she is unable to show that she is unable to pursue a job in the social work profession and that her inability "is due to actions that were clearly arbitrary and unreasonable."

9

The District Court also correctly concluded that even if Ms. Dudley had established a protected liberty or property interest, that due process was given. Regarding Ms. Dudley's grade change, Ms. Dudley was informed of the reasons why her grade was being changed from "pass" to "fail," and Ms. Dudley had an opportunity to appeal that decision. Regarding the due process given during the Student Conduct Hearing, Ms. Dudley was provided notice of the disciplinary action and had an opportunity to be heard. The process was careful and deliberate, and Ms. Dudley had the opportunity to appeal the decision. Simply because she does not agree with the process and outcome does not mean she was denied due process.

## STANDARD OF REVIEW

The district court's grant of a motion to dismiss for failure to state a claim is reviewed de novo. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d at

10

732. Dismissal without leave to amend is proper where amendment would be futile. *Manzarek*, 519 F.3d at 1030.

The district court's denial of a motion for injunctive relief is reviewed for abuse of discretion. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023); *Oregon Coast Scenic R.R., LLC v. Oregon Dep't of State Lands*, 841 F.3d 1069, 1072 (9th Cir. 2016). "An abuse of discretion occurs when a court bases its decision on an erroneous legal standard or on clearly erroneous factual findings." *United States v. Estate Pres. Serv.*, 202 F.3d 1093, 1097 (9th Cir. 2000).

"A district court bases its decision on an erroneous legal standard if it fails to 'employ the appropriate legal standards that govern the issuance of a preliminary injunction,' or if it applies the appropriate standards but 'misapprehend[s] the law with respect to the underlying issues in the litigation.'" *Baird*, 81 F.4th at 1040 (quoting *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1096 (9th Cir. 2008)).

## ARGUMENT

## I. Ms. Dudley Failed to State a Procedural Due Process Claim

The District Court properly dismissed Ms. Dudley's Amended Complaint for failure to state a claim pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. To state a procedural due process claim, a plaintiff must allege: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the

11

interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The District Court properly held Ms. Dudley's claims fail to set forth a protected property or liberty interest, and even assuming such an interest exists, Ms. Dudley's claim fails to set forth a lack of process.

### A. Ms. Dudley Lacks a Protected Property Interest

The District Court properly concluded Ms. Dudley lacks a property interest in a grade in a class, degree, credits, future enrollment at BSU, or BSU's disciplinary policy. On appeal, Ms. Dudley ignores the District Court's analysis of existing Idaho case law, as well as the District Court's ultimate conclusion that Ms. Dudley fails to point to state law conferring a property interest in higher education. *See* 1-ER-19. Given the absence of an independent source for the property interest alleged, the District Court properly held Ms. Dudley failed to allege a cognizable property interest protected under the due process clause.

The Constitution does not define property interests protected by the Fourteenth Amendment; rather such interests are defined by independent sources, including state statutes or rules entitling citizens to certain benefits. *See Goss v. Lopez*, 419 U.S. 565, 572–73 (1975) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Reference to "an independent source such as state law" will determine whether a "legitimate claim of entitlement" to the benefit exists. *Roth*, 408 U.S. at 576–77.

The Ninth Circuit has not recognized a generalized property interest in higher education. Instead, courts must make a state-specific inquiry to determine whether a property interest exists once a plaintiff meets her burden of identifying a cognizable property interest based on a source of law independent of the Constitution. *See Doe v. White*, 859 F. App'x 76, 77 (9th Cir. 2021) *cert. denied*, 142 S. Ct. 1414 (2022) ("Because the Due Process Clause does not create freestanding property interests, a plaintiff must identify a cognizable property interest based on an 'independent source such as state law.' We, therefore, examine California law to decide whether Doe had a clearly established property interest in her continued attendance at a state university.") (internal citations omitted); *Wynar v. Douglas Cty. Sch. Dist.*, 728 F.3d 1062, 1072 (9th Cir. 2013) (concluding, under Nevada law, plaintiff had property interest in his compulsory K-12 public education and therefore was entitled to due process before he could be suspended).

As stated by Ms. Dudley, "[t]he hallmark of property… is an individual entitlement *grounded in state law*, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (emphasis added). However, Ms. Dudley cannot point to any Idaho state law that confers a property interest in a grade, college education, or degree. Rather, Ms. Dudley merely points to "academic standards and institutional procedures," which are procedural rules that do not confer a protected property interest.

13

As in her response to Defendants' Motion to Dismiss, Ms. Dudley again relies on *Wickstrom v. N. Idaho Coll.*, 725 P.2d 155 (Idaho 1986) on appeal, but Ms. Dudley ignores the District Court's analysis of the case. In *Wickstrom*, the Idaho Supreme Court decided whether the plaintiffs' claims arose under tort law or contract law. 725 P.2d at 156. There, the plaintiffs enrolled in a program advertised to qualify participants for entry-level journeyman employment. *Id.* After completing the program, however, the plaintiffs learned they were not qualified as entry-level journeymen. *Id.* The plaintiffs subsequently sued, stating a cause of action in tort. *Id.* On appeal, the Idaho Supreme Court concluded the relationship between a college and its students is contractual and permitted the plaintiffs to amend their complaint to state a cause of action in contract. *Id.* at 157-58.

*Wickstrom* is inapposite to Ms. Dudley's argument. First, *Wickstrom* simply held there was a contractual relationship between a college and students. 725 P.2d at 157. *Wickstrom* did not state such contractual relationship granted a protected property interest to the students. Second, to the degree such a holding indicates some property interest exists, the Idaho State Board of Education has since revised its manual to mandate universities *disclaim* any contractual reliance on catalogues, bulletins, etc. ISBOE Governing Policies and Procedures § III(P)(3). *See* 1-ER-16.

As the District Court concluded in this case, a university's reserved right to change regulations and requirements for graduation, for example, cuts against the

14

existence of an entitlement grounded in state law. *See id.* Put differently, a university's reserved right to change the requirements for graduation supports that a student does not have a protected property interest in her degree because the university may change the requirements for that degree.

Moreover, federal courts have previously concluded Idaho students do not possess a property interest in their education. *See Duffin v. Idaho State Univ.*, No. 4:16-CV-00209-BLW, 2017 WL 6543873, at *5 (D. Idaho Dec. 21, 2017) (concluding no property interest alleged where Idaho college student failed to point to any state law creating such an interest and Court was otherwise unaware of any such law); *see also Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129, 1145 (9th Cir. 2024) (within Takings Clause context, concluding "that a public education in Idaho lacks the essential 'bundle' of private property characteristics" necessary to give rise to a vested private property interest). Relatedly, the District of Idaho has also recognized "[t]he text of the Idaho Constitution does not directly purport to establish an individual right" to education in Idaho. *Zeyen v. Boise Dist. #1*, No. 1:18-CV-207-RCT, 2023 WL 4215402, at *6 (D. Idaho June 9, 2023), *aff'd sub nom. Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129 (9th Cir. 2024). Nor has any court recognized a property interest in a grade. *See Njokom v. El Camino Cmty. Dist. Coll.*, No. CV 20-9287-CAS (KS), 2020 WL 6438415, at *7 (C.D. Cal. Oct. 14, 2020), *appeal dismissed sub nom. Njokom v. El Camino Cmty. Coll. Dist.*, No. 20-

15

56153, 2020 WL 8373362 (9th Cir. Nov. 19, 2020). To the extent Ms. Dudley

contends BSU policies create a property right, this Court has recognized "[n]ot every

procedural requirement ordained by state law . . . creates a substantive property

interest entitled to constitutional protection." *Shanks v. Dressel*, 540 F.3d 1082, 1091

(9th Cir. 2008). Indeed, even if Ms. Dudley had a cause of action for some alleged

failure to follow policy, for example, that cause of action alone is insufficient to

transform the potential interest into a private property right. *See Zeyen*, 2023 WL

4215402, at *6. This is especially true where compliance with BSU's policies would

not compel a particular result in this case. *See Shanks*, 540 F.3d at 1091 ("Only if the

governing statute compels a result 'upon compliance with certain criteria, none of

which involve the exercise of discretion by the reviewing body,' does it create a

constitutionally protected property interest."). While Ms. Dudley argues the

"standards and procedures limit the reasons BSU can impose discipline and dictate

evaluation of academic performance,"[1] Appellant's Opening Brief at 43, Ms. Dudley

---

[1]     In fact courts have found grading in the academic context to be "pedagogic" and "subsumed under the university's freedom to determine how a course is to be taught," *Brown v. Armenti*, 247 F.3d 69, 75 (3rd Cir. 2021), because "'it is the [u]niversity's name, not [the professor]'s, that appears on the diploma; the [u]niversity, not [the professor], certifies to employers and graduate schools a student's successful completion of a course of study," *Stronach v. Virginia State Univ.*, No. CIV.A. 3:07CV646-HEH, 2008 WL 161304, at *3 (E.D. Va. Jan. 15, 2008) (quoting *Wozniak v. Conry*, 236 F.3d 888, 891 (7th Cir. 2001)) (alterations original), and thus assignment of grades is ultimately within a university's constitutionally protected academic freedom, *see Stronach*, 2008 WL 161304, at *3-4 (citing *Urofsky v. Gillmore*, 216 F.3d 401, 414 (4th Cir. 2000)).

16

does not seriously contend a different ultimate result is required here. Put differently, BSU was still able to exercise discretion, and a certain result was not compelled by following BSU's standards and procedures. *See Shanks*, 540 F.3d at 1091.

Finally, higher education is not compulsory. While a K-12 student may be able to allege a property interest in their compulsory education, any such interest would be distinguishable from a higher education student's elective interest in public education. *E.g.*, *Ryan v. Harlan*, No. CV-10-626-ST, 2011 WL 711110, at *7 (D. Or. Feb. 22, 2011); *Fernandez v. Rosenzwieg*, No. CIV. 95-241-FR, 1996 WL 453046, at *3 (D. Or. Aug. 8, 1996). Indeed, since attendance in post-high school education is not mandated, any resulting property interest would be less protected. *Ryan*, 2011 WL 711110, at *7; *see Brady v. Portland State Univ.*, No. 3:18-CV-01251-HZ, 2019 WL 4045652, at *5 (D. Or. Aug. 23, 2019).

Ms. Dudley fails to identify an independent source of law establishing a protected property interest in a grade, her degree, credit, future enrollment, or BSU's disciplinary process. In the absence of an independent source, the District Court properly dismissed Dudley's procedural due process claims for lack of a protected property interest.

### B.     Ms. Dudley Lacks a Protected Occupational Liberty Interest

The District Court properly held Ms. Dudley failed to state an occupational liberty interest. Ms. Dudley alleged neither that she is completely prohibited from

employment in her chosen profession nor that the revocation of her social work degree was clearly arbitrary and unreasonable. Accordingly, the District Court properly dismissed this claim.

"[A] plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007), *aff'd sub nom. Engquist v. Or. Dep't of Agr.*, 553 U.S. 591 (2008). Courts have "limit[ed] the claim to extreme cases." *Id*. Cases involving a violation of this interest "have 'dealt with a *complete prohibition* on the right to engage in a calling, and not a sort of brief interruption.'" *Paul v. City of Sunnyside*, 405 F. App'x 203, 205 (9th Cir. 2010) (internal citations omitted). Relatedly, "the [Supreme] Court has never held that the right to pursue work is a fundamental right." *Sagana v. Tenorio*, 384 F.3d 731, 743 (9th Cir. 2004), *as amended* (Oct. 18, 2004).

Accordingly, to state such a claim, Ms. Dudley must show, first, that she is unable to pursue a job in the social work profession, and second, that her inability "is due to actions that were clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991) (internal quotations omitted). Dudley's allegations fail on both elements. First, Ms. Dudley is not entirely foreclosed from her chosen profession. *See Kerbs v. Madison Cnty., Idaho*, No. 4:12-

18

CV-00178-EJL, 2014 WL 869472, at *6 (D. Idaho Mar. 5, 2014) (finding lack of evidence that plaintiff was barred from other public employment fatal to claim on summary judgment). While Ms. Dudley may lack certain qualifications without a degree, that alone does not establish Ms. Dudley is unable to pursue a career in the social work profession. Ms. Dudley also does not allege revocation of her degree bars her from completing her degree requirements at another institution and thereafter obtaining her social work license.

Moreover, Ms. Dudley cannot seriously allege the revocation of her degree was arbitrary or unreasonable where she does not dispute she inappropriately accessed social work files of her ex-partner and his new partner. Ms. Dudley's own conduct was the catalyst for this outcome, and Defendants' actions were substantially related to ensuring professional standards related to public health, safety, and general welfare were respected. At bottom, the facts as alleged in this case are not so extreme as to give rise to an occupational liberty claim. The District Court correctly held Ms. Dudley failed to state a claim for deprivation of an occupational liberty interest.

## C. Ms. Dudley Received Adequate Process

Even assuming Ms. Dudley possessed a protected liberty or property interest that was deprived, Ms. Dudley received adequate process under the Constitution.

19

Accordingly, the District Court correctly concluded Ms. Dudley received adequate process, and dismissal of the case was proper. *See* 1-ER-23-27.

In analyzing the process Ms. Dudley received, the District Court focused on "two sequences of events." 1-ER-23. The District Court first considered the process involved in the change of Ms. Dudley's grade, which led to revocation of her degree, and then considered the process involved in the Student Conduct Hearing, which led to Ms. Dudley's expulsion from BSU. 1-ER-23. Under both sequences of events, the District Court properly concluded Ms. Dudley received constitutionally adequate process. *See* 1-ER-23-27.

### 1. Change of Ms. Dudley's Grade and Resulting Revocation of Her Degree

Even if Ms. Dudley was deprived of a cognizable, protected property or liberty interest in her grade, the District Court correctly held Ms. Dudley was not entitled to notice and a hearing prior to the grade change and subsequent degree revocation because the grade change was an academic decision made after careful and deliberate consideration. *See* 1-ER-23-25.

The Supreme Court consistently recognizes due process is not a fixed concept but rather is flexible to the particular situation. *E.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Though due process often requires some form of hearing before a deprivation may occur, a hearing is not always required. *E.g.*, *Mathews*, 424 U.S. at 333. Accordingly, in determining whether a particular deprivation comports with due

20

process, a court typically balances three factors, known as the *Mathews* factors: (1) the private interests subjected to official action; (2) the risk of an erroneous outcome and the "probable value, if any, of additional or substitute procedural safeguards"; and (3) the governmental interest involved, including fiscal and administrative concerns. *Mathews*, 424 U.S. at 334-335.

When depriving a student of a property or liberty interest for academic reasons, the Supreme Court has expressly recognized a university need not hold a hearing. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85, 84-91 (1978). Though no hearing is required, a deprivation for academic reasons must be made after careful and deliberate consideration. *Horowitz*, 435 U.S. at 85. Moreover, even where a university deprives a student of a property or liberty interest for disciplinary reasons, a formal hearing is not necessarily required. *Id.* at 89.

Denial of a degree based on a student's failure to fulfill course requirements is an academic decision. *See, e.g.*, *Horowtiz*, 435 U.S. at 86 (record left no doubt medical student's dismissal for failure to fulfill clinical requirements was academic); *Mauriello v. Univ. of Med. & Dentistry*, 781 F.2d 46, 50 (3d Cir. 1986) (dismissal for poor research and lack of dedication to academic pursuits was academic); *Hennessy v. City of Melrose*, 194 F.3d 237, 250 (1st Cir. 1999) (dismissal for failing a student teacher practicum "fell well within the sphere of constitutionally permissible academic decision making"). As a general matter, courts are cautioned against

21

overriding an academic decision "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).

On appeal, Ms. Dudley contends the change of her grade, which resulted in the revocation of her degree could not occur without notice and a hearing. As the District Court correctly recognized though, a deprivation for academic reasons does not require a hearing. 1-ER-23; *see Horowitz*, 435 U.S. at 84-91. Dr. Roark's decision to change Ms. Dudley's grade was based on Ms. Dudley's failure to satisfy course requirements and relevant professional standards, and therefore, a hearing was not required as long as the decision was careful and deliberate. *See Horowitz*, 435 U.S. at 89-91; *see also Taylor v. Bd. of Regents of Univ. Sys. of Ga.*, 2022 WL 4857906, at *6 (N.D. Ga. Oct. 3, 2022) ("The questions of how Plaintiff's disciplinary penalty should be computed into his course grade and how it reflected on his general academic progress are, the Court finds, essentially academic ones."); *Oyama v. Univ. of Hawaii*, 813 F.3d 850, 875 (9th Cir. 2015) ("That the University's decision was based on Oyama's professional disposition, and not his intellectual aptitude, does not strip it of its academic character. In the context of this certification program, a central criterion for academic success was a demonstration of the ability to satisfy professional standards for teacher certification."). Likewise, Ms. Dudley's

22

conduct during her internship demonstrated an inability to demonstrate expected ethical and professional standards for social workers.

The decision to change Ms. Dudley's grade was careful and deliberate. In the November 2, 2022 letter notifying Ms. Dudley of the grade change, Dr. Roark noted an investigation by IDHW revealed Ms. Dudley improperly accessed records during her internship, and Dr. Roark identified how Ms. Dudley's conduct fell short of course requirements and relevant professional standards. 2-ER-155-56. Based on this conduct, Dr. Roark made the academic decision to change Ms. Dudley's grade because she did not meet the requirements of SOCWRK 481 when she exercised judgment inconsistent with a senior social work student by accessing IDHW files in which she had no legitimate business interest. That decision was reviewed multiple times as Ms. Dudley appealed the decision. 2-ER-155-156. A careful and deliberate decision is demonstrated by the written decisions resolving Ms. Dudley's various appeals. *See Brown v. Li*, 308 F.3d 939, 955 (9th Cir. 2002). Additionally, the ultimate decision as to assignment of a grade belongs to the University and is subsumed by the University's constitutional right to academic freedom. *See Stronach v. Virginia State Univ.*, No. CIV.A. 3:07CV646-HEH, 2008 WL 161304, at *3 (E.D. Va. Jan. 15, 2008).

Consideration of Ms. Dudley's professional disposition does not strip the grade change decision of its academic character. *See Oyama*, 813 F.3d at 875; *accord*

23

*J. Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 298-99 (6th Cir. 2019) (discussing that lack of professionalism may be treated as an academic matter). As Dr. Roark's November 2, 2022 letter explains, Ms. Dudley's ability to satisfy professional practice standards for social workers was an element of her ability to academically succeed in SOCWRK 481, and as IDHW's investigation revealed, Ms. Dudley failed to act consistently with professional practice standards. *See Oyama*, 813 F.3d at 875; *see also Perez v. Texas A & M Univ.*, 589 F. App'x 244, 249 (5th Cir. 2014) (recognizing failure to meet applicable professional standards as relevant to student's academic dismissal); *Fenje v. Feld*, 398 F.3d 620, 625 (7th Cir. 2005) (observing that "nexus" between student's "lack of candor" and "his capacity to be trusted with patient care" made the student's dismissal an academic decision); *J. Endres*, 938 F.3d at 300 (emphasizing decision is academic where university must decide whether student's conduct satisfies a standard of academic competence). Put differently, a central criterion for Ms. Dudley's academic success in her clinical internship—and in her degree program—was a demonstration of her ability to satisfy professional standards. *See Oyama*, 813 F.3d at 875. Ms. Dudley's conduct failed to meet that criterion for academic success. The resulting grade change was therefore an academic decision.

The November 2, 2022 letter also detailed Dudley's opportunity to appeal the decision to award her a failing grade. 2-ER-155-56. Ms. Dudley's ability to appeal

24

the decision cuts against the risk of an erroneous deprivation and further supports that the academic decision to change Ms. Dudley's grade was careful and deliberate. Indeed, the District Court recognized the opportunity to appeal supported that the university provided sufficient due process in making the academic decision to change Ms. Dudley's grade. 1-ER-49. Moreover, insofar as any opportunity to be heard on an academic decision was required, an appeal provided Ms. Dudley with an opportunity to be heard, and Ms. Dudley took advantage of this process. Taken altogether, the decision to change Ms. Dudley's grade was an academic decision, and that decision resulted from careful and deliberate consideration.[2]

Lastly, Ms. Dudley does not dispute she viewed files of individuals unrelated to her internship work at IDHW. *See* 2-ER-171. Indeed, IDHW conducted an investigation and separately concluded Ms. Dudley improperly accessed the files.

---

[2] Ms. Dudley also summarily contends Dr. Roark changing her grade, rather than the instructor of record, was in violation of BSU's policy. As noted above, the University, not individual professors, have the right to determine a student's final grade in a course and whether or not the student successfully completed a course of study. *Wozniak v. Conry*, 2365 F.3d 888, 891 (7th Cir. 2001); *Lovelace v. Southeastern Mass. Univ.*, 793 F.2d 419, 426 (1st Cir. 1986). Ms. Dudley does not address how a violation of BSU's policy independently gives rise to a due process violation. *See, e.g.*, *T.T. v. Bellevue Sch. Dist.*, 376 F. App'x 769, 771 (9th Cir. 2010) (noting violation of administrative regulation does not alone give rise to due process denial). In any event, Dr. Roark changing the grade was purely the result of timing and a right maintained by the University, and Ms. Dudley remained able to appeal the decision, in accordance with university policy. *See* 2-ER-155-57. That Dr. Roark changed the grade neither deprives the decision of its academic character nor cuts against the decision being careful and deliberate.

25

*See* 2-ER-155-56. As such, no reason exists to now hold a hearing, because given the admitted conduct and independent investigation by IDHW, the resulting academic decision that Ms. Dudley failed to meet requirements for a passing grade in the internship would not change. *See Black Coal. v. Portland Sch. Dist. No. 1*, 484 F.2d 1040, 1045 (9th Cir. 1973). Accordingly, the District Court correctly concluded Ms. Dudley received sufficient process related to the change of her grade and subsequent revocation of her degree because any deprivation was for academic reasons after careful and deliberate consideration.

### 2. The Student Conduct Hearing and Ms. Dudley's Expulsion

Even if Ms. Dudley was deprived of a cognizable property or liberty interest, the District Court properly determined Ms. Dudley received adequate process related to the Student Conduct Hearing because Ms. Dudley received notice of the Student Conduct Hearing, copies of the evidence relied upon, and received an opportunity to be heard at the hearing.

Ms. Dudley contends the District Court erred by not considering the three factors set forth in *Mathews*. The District Court's analysis, however, implicitly considered the *Mathews* factors. *See* 1-ER-26-27. The District Court was aware of "the ramifications" of its decision, the notice of hearing Ms. Dudley received, Ms. Dudley's attendance at the hearing, and Ms. Dudley's opportunity to hear evidence and counter the evidence. 1-ER-26-27, 30.

26

As the Amended Complaint illustrates, Ms. Dudley received notice of the charges against her, and she received an opportunity to be heard. Ms. Dudley was provided with a notice of contemplated disciplinary action at least twice before her hearing: once on November 17, 2022, when she received an email providing notice of the allegations and of a pre-hearing meeting, as well as the date for the Student Conduct Hearing, and again on January 9, 2023, when she received notice of the Student Conduct Hearing being reset to February 17, 2023. 2-ER-158-59. Ms. Dudley also had notice, prior to the Student Conduct Hearing, of potential degree revocation and expulsion from the university. 2-ER-159. At the Student Conduct Hearing on February 17, 2023, Ms. Dudley was permitted to present her defense. 2-ER-171. In doing so though, Ms. Dudley did not deny accessing files of individuals unrelated to her internship work at IDHW. 2-ER-171. Ms. Dudley also received an opportunity to address the questions and remarks of the Student Conduct Board. 2-ER-171. Lastly, Ms. Dudley had the opportunity to appeal the decision of the Student Conduct Board and ultimately did appeal. 2-ER-175.

On balance, the *Mathews* factors tip in Defendants' favor. *See Mathews*, 424 U.S. at 334-335. The risk of an erroneous outcome is significantly reduced where Ms. Dudley received notice and an opportunity to be heard; Ms. Dudley does not dispute she viewed unrelated files; and Ms. Dudley had the opportunity to appeal. Moreover, the governmental interest in developing and regulating the social work

profession and protecting the public supports the deprivation. Though Ms. Dudley's private interests are clearly adversely affected, the procedural safeguards provided and the governmental interest involved establish Ms. Dudley received sufficient due process.

Ultimately, Ms. Dudley's disagreement with how the hearing was conducted does not mean she was deprived of due process. *See Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1148 (D. Idaho 2015) (noting that, although the plaintiff disagreed with the process and outcome, such did not demonstrate defendant "failed to satisfy the essential due process demands of notice and an opportunity to be heard"); *see also Kennerly v. United States*, 721 F.2d 1252, 1256 (9th Cir. 1983) (recognizing "that a due process hearing need not take the form of a judicial proceeding"). Though dissatisfied with the outcome, Ms. Dudley received notice and a meaningful opportunity to be heard, which is sufficient due process. Relatedly, additional procedural safeguards would not alter the outcome in Ms. Dudley's situation. Ms. Dudley does not dispute she viewed files of individuals unrelated to her internship work at IDHW. 2-ER-171. Even if she did, IDHW's independent investigation and documentation establishes Ms. Dudley improperly accessed files. *See* 2-ER-155-56. As such, no reason exists to now hold another hearing where the outcome would remain the same. *See Black Coal.*, 484 F.2d at 1045. The District Court properly

28

determined Ms. Dudley received adequate process related to the Student Conduct Hearing.

## II. Defendants are Entitled to Qualified Immunity

The District Court properly concluded Defendants were entitled to qualified immunity and cannot be held liable for damages. *See* 1-ER-29. Ms. Dudley cannot show any alleged property interest was clearly established at the time of the challenged conduct in this case, and as a result, Defendants are entitled to qualified immunity.

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether a government official is entitled to qualified immunity, the Court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, (1) violated a statutory or constitutional right, (2) that was clearly established at the time of the challenged conduct. *Moonin v. Tice*, 868 F.3d 853, 860 (9th Cir. 2017). In effect, qualified immunity gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011).

The plaintiff has the burden of establishing that the law was well-established. *Sorrels v. McKee,* 290 F.3d 965, 969 (9th Cir. 2002). "[T]he law regarding procedural due process claims can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent." *Pavel v. Univ. of Oregon*, 774 F. App'x 1022, 1024 (9th Cir. 2019) (internal quotation marks omitted). While a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

Here, Ms. Dudley has pointed to no existing precedent that establishes her alleged property right to a grade, a college degree, or college education in Idaho, and the District Court could find none either. Indeed, as discussed above, Ms. Dudley relies on persuasive authority about contractual relations between students and universities, as well as state education policies, to contend such a property interest even exists. In doing so, Ms. Dudley implicitly concedes the alleged property right is not clearly established because she fails to point to any existing precedent providing as much. *See Pavel*, 774 F. App'x at 1024. Rather, Ms. Dudley seeks to establish a protected property right.

In the absence of existing precedent, and with the District Court having found none, the District Court properly concluded Defendants are entitled to qualified immunity because the alleged property right was not clearly established. Moreover,

30

even if this Court were to overrule the District Court's decision regarding the existence of a protected property right or liberty interest, the fact that competent courts could come to competing conclusions demonstrates the law on the procedural due process in this circumstance was not clearly established at the time of the challenged conduct.

**III.     The District Court Did Not Abuse its Discretion in Denying Ms. Dudley's Request for Permanent Injunctive Relief**

For the reasons set forth regarding Ms. Dudley's other claims, the District Court's dismissal of her claim for permanent injunctive relief was not an abuse of discretion.  In seeking a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Injunctive relief is an extraordinary remedy and is not awarded as of right. *E.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

Here, the District Court properly dismissed Ms. Dudley's claims, as discussed above, because Ms. Dudley fails to allege a protected property interest or any due process violations. As a result, the District Court also denied Ms. Dudley's request for permanent injunctive relief, and such denial was both proper and within the District Court's discretion.

**IV.** **The District Court Did Not Abuse its Discretion in Denying Ms. Dudley's Request for Preliminary Injunctive Relief**

Finally, Ms. Dudley challenges the District Court's order denying her motion for preliminary injunctive relief. The District Court did not abuse its discretion in denying Ms. Dudley's motion for a preliminary injunction because the Court properly concluded Ms. Dudley did not demonstrate a likelihood of success on the merits. 1-ER-39-48.

A preliminary injunctions functions "to preserve the status quo ante litem pending a determination of the action on the merits." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). In analyzing a preliminary injunction motion, a district court must determine whether the moving party "has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The first factor is both a threshold inquiry and the most important factor. *Id.* If the moving party fails to show a likelihood of success on the merits, the court need not consider the other factors. *Id.*

As an initial matter, Ms. Dudley's request for preliminary injunctive relief is now moot because she has since proceeded through the two processes underlying her change of grade, degree revocation and subsequent expulsion. In requesting a

32

preliminary injunction, Ms. Dudley sought to enjoin Defendants from conducting the Student Conduct Hearing and sought to require Defendants follow certain safeguards during any such hearing. *See* 1-ER-32. The Student Conduct Hearing has since occurred, however, and Ms. Dudley now separately challenges the propriety of that hearing, as discussed above. Consequently, this Court can no longer grant any effective relief as sought in the preliminary injunction request. *See Akina v. Hawaii*, 835 F.3d 1003, 1010 (9th Cir. 2016). Accordingly, Ms. Dudley's request for preliminary injunctive relief is moot.

Separately, the District Court did not abuse its discretion in denying Ms. Dudley's request for preliminary injunctive relief because Ms. Dudley failed to show a likelihood of success on the merits. The Court assumed, without deciding, Ms. Dudley possessed a protected interest, but the Court ultimately concluded the anticipated process for deprivation as outlined in the University's policies appeared to comply with constitutional requirements. *See* 1-ER-42-47. That Ms. Dudley now contends the process underlying the alleged deprivation did not ultimately comply with constitutional requirements does not change the District Court's reasonable conclusion that Ms. Dudley failed to show a likelihood of success on the merits at the time of her request for preliminary injunctive relief. Moreover, to the extent Ms. Dudley argues the District Court's denial of preliminary injunctive relief "emboldened BSU" to take action inconsistent with Ms. Dudley's allegedly

33

protected interest, Appellant's Opening Brief 65, such argument is both speculative and misplaced in now challenging the District Court's decision in hindsight.

The District Court did not abuse its discretion in denying Ms. Dudley's motion for preliminary injunctive relief. Moreover, the request is now moot because Ms. Dudley has since proceeded through the Student Conduct Hearing, which Ms. Dudley sought to enjoin happening, so the relief requested can longer be awarded.

## CONCLUSION

For the foregoing reasons, the District Court was correct and its decisions should be affirmed. Not only did Ms. Dudley fail to demonstrate a property or liberty interest grounded in state law, but she was afforded lawful due process. Furthermore, given the legal landscape at the time, even if such protected interests exist, they were not clearly established, and thus Defendants/Appellees are all entitled to qualified immunity. Accordingly, Defendants/Appellees respectfully request this Court affirm the District Court's decision granting Defendants/Appellees' Motion to Dismiss and the District Court's decision denying extension of the preliminary injunction and affirm the judgment entered in favor of all of the Defendants.

DATED this 6th day of November, 2024.

Kelly Law, PLLC

*/s/ Michael E. Kelly*
Michael E. Kelly

34

*Attorneys for Appellees Boise State University, Tony Roark, Mandy Nelson, Kate Law, Joelle Powers, John Buckwalter, Christopher Hyer, Roger Munger, Gunnar Whisler, Kelsie Zak, Emma Ford, Mike Dixon*

35

## STATEMENT OF RELATED CASES

**9th Cir. Case Number 24-3233**

Pursuant to Circuit Rule 28-2.6, I state that I am not aware of any other related cases currently pending in this Court.

**Signature**: /s/ Michael E. Kelly          **Date:** November 6, 2024

## CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number 24-3233**

I am the attorney for Defendants/Appellees.

**This brief contains 8484 words,** excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

**Signature**: /s/ Michael E. Kelly        **Date:** November 6, 2024

## CERTIFICATE OF SERVICE

**9th Cir. Case Number 24-3233**

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Signature**: /s/ Michael E. Kelly          **Date:** November 6, 2024